MADDOX, Justice
(dissenting).
The majority holds that a tool rest on a grinding machine is a “safety device” as that term is used in § 25-5-ll(c)(2), Ala.Code 1975, and was for a two-fold purpose of protecting the employee’s hands while the machine was in use, and facilitating his work. I must respectfully dissent. I attach to this dissent a photograph of the machine, in order to show why I think the tool rest was not a “safety device” as contemplated by the Legislature when it adopted § 25-5-ll(c)(2).
I recognize that the tool rest, positioned as it is, does provide some safety to the operator, but providing safety is not its “principal purpose.” When the Legislature amended § 25 — 5—11(c)(2), it specifically provided for employees to be able to bring third-party actions, which could include actions against co-employees when the co-employees were guilty of willful or wanton conduct.
Section 25-5-11, as amended, and as applicable here, reads, in part, as follows:
“§ 25-5-11. Actions against third parties jointly liable with employers for injuries or death; actions for injury or death resulting from willful conduct; attorney’s fees in settlements with third parties.
[[Image here]]
“(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer or any workers’ compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing any payment of workers’ compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation, or of a labor union, or an official or representative thereof, the employee shall have a cause of action against the person, workers’ compensation carrier, or labor union.
“(c) As used herein, ‘willful conduct’ means any of the following:
[[Image here]]
“(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.”
(Emphasis added.) Before the Legislature amended § 25-5-11, this Court had considered several cases in which guard rails or other safety devices had been removed from machines and employees had later been injured on those machines, and it is my opinion that the exception for the “willful and intentional removal from a machine of a safety guard or safety device” was specifically written to address situations far different from that present in this case. The history of co-employee actions in this State shows that the Legislature has repeatedly attempted to limit third-party actions against co-employees and others, rather than beneficently to provide for them, except when there is a showing of “willful conduct,” of course, one instance of such conduct occurring when there is a “willful and intentional removal of a safety guard or safety device.”[1]
*1039 The legislative policy of exempting these persons from suit is a matter of legislative prerogative, and I believe that this Court, in liberally construing the tool rest in this case to be a “safety guard or safety device,” does exactly the opposite of what the Legislature attempted to accomplish. Rightly or wrongly, the Legislature clearly has not considered such actions as this one to be “beneficent,” but has considered them to be a “social evil.”[2]
I believe that the tool rest in this case, although it provides for some safety, is similar to the “splitter box” in Hallmark v. Duke, 624 So.2d 1058 (Ala.1993). There, this Court held that the “splitter box,” the “transfer lines,” and the “ninety-degree elbow joint” were not safety devices within the purview of the statute. Id. at 1061. Rather, these integral parts of the clarifier system were necessary conduits through which the liquid must travel in the liquor processing system and were never intended to act as safety mechanisms. Id. at 1061.
The tool rest in the present case is an integral part of the grinding process, but it is not within the statutory term “safety guard or safety device.” The primary function of the tool rest is to allow the operator to hold the objects in the proper position to expedite work.[3]
Based on the foregoing, I believe that Smith fails on his claim under § 25-5-11(c)(2), Ala.Code 1975, because I think the tool rest does not come within the term “safety device.” Therefore, I would affirm the summary judgment for the co-employee defendants.
*1040 [[Image here]]

. The history of co-employee lawsuits is well known, and such actions have received the attention of the Legislature and this Court, especially in the last two decades. Insofar as I can tell, the question of the right of an employee to sue a fellow employee in a third-party action had not been considered until the question was presented to this Court for resolution in United States Fire *1039 Insurance Co. v. McCornick, 286 Ala. 531, 243 So.2d 367 (1970). In that case, by an opinion authored by Merrill, J., and joined by Lawson, Harwood, Maddox, and McCall, JJ., the Court held that the Legislature had not specifically mandated that co-employees could not be sued in third-party actions. The Legislature quickly reacted to this holding and passed legislation to immunize co-employees from such actions. Act 1062, Acts of Alabama 1973, at 1771-72. That immunizing legislation was promptly attacked as being unconstitutional on the ground that the act signed by the Governor materially differed from the bill passed by the Legislature. A divided Court held that the 1973 Act was valid and that the defendants were entitled to a summary judgment because the “plaintiff’s injuries resulted from an accident which arose out of and in the course of his employment, and that by virtue of Tit. 26, § 312 [Code of Alabama of 1940], co-employees are not third-party tortfeasors against whom an action such as this can be brought.” Childers v. Couey, 348 So.2d 1349, 1352 (Ala.1977) (Embry, J., joined by Torbert, C.J., and Bloodworth and Faulkner, JJ., with Almon, J., concurring in the result; Shore, J., dissenting with opinion, in which Maddox, J., joined; Jones and Beatty, JJ., dissenting with opinions); also see, Atchison v. Horton, 348 So.2d 1358 (Ala.1977). The Legislature, in 1975, amended § 312, Tit. 26 (which authorized the filing of third-party lawsuits), but continued to immunize co-employees from suit, as it had in the 1973 Act. See Act No. 86, 4th Ex.Sess. § 10, p. 2748, Acts of Alabama 1975. Even though the 1973 Act immunizing co-employees was upheld against the attack made upon it, an attack was made against the 1975 amendment in Grantham v. Denke, 359 So.2d 785 (Ala.1978), on the ground that the Legislature could not immunize co-employees from third-party lawsuits, because of the provisions of § 13, Ala. Const. 1901. A majority of this Court (opinion by Embry, J., with whom Bloodworth, Faulkner, Jones, Almon, Shores, and Beatty, JJ., joined; Maddox, J., dissenting, with opinion in which Torbert, C.J., concurred) held that the immunizing legislation was unconstitutional as violating § 13 of the Alabama Constitution.
In 1984, the Legislature again amended what is now § 26-5-11, to provide for co-employee immunity, except when an injury has resulted from "willful conduct.” Ala.Acts 1984, 2d Ex. Sess., Act No. 85-41, p. 44, § 3. That amendment was the subject of an attack on the ground that § 13, Ala. Const. 1901, prohibited the Legislature from granting co-employees immunity. See Reed v. Brunson, 527 So.2d 102 (Ala.1988), in which this Court upheld the legislation now being construed.

. In Reed v. Brunson, 527 So.2d 102 (Ala.1988), this Court said that “the Legislature does have the police power to eliminate such co-employee suits in an attempt to eradicate or ameliorate what it perceives to be a social evil." 527 So.2d at 116. In that case, this Court set out in its entirety Section 1 of the Act we construe today. 527 So.2d at 112-13. In its findings, the Legislature specifically stated that co-employee lawsuits were "contrary to the intent of the legislature in adopting a comprehensive worker's compensation scheme and are producing a debilitating and adverse effect upon efforts to retain existirlg, and to attract new industry to the state.”

. The photographs of the grinding machine that appear in the record show the contrast between the tool rest and the spark shield located over the grinding wheel. The appearance of the machine suggests that the spark shield would be for the principal purpose of preventing sparks from causing injury to the operator or starting a fire.